Filed 6/9/15  Wong v. Tam CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LENA WONG,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES TAM,<br><br>    Defendant and Appellant. | B259365<br><br>(Los Angeles County<br>Super. Ct. No. BC541794) |

APPEAL from orders of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Leech Tishman Fuscaldo & Lampl and Lidell A. Page for Defendant and Appellant.

Freeman, Freeman & Smiley, Curtis A. Graham, and Tracy R. Mattie-Daub for Plaintiff and Respondent.

\* \* \* \* \* \*

Defendant James Tam appeals the trial court's orders sustaining evidentiary objections and granting summary adjudication in favor of plaintiff Lena Wong on her claim of partition of a residence plaintiff and defendant co-owned. In granting summary adjudication, the court excluded defendant's key evidence supporting his defenses and purporting to create a disputed issue of fact. Defendant has failed to demonstrate the trial court abused its discretion in excluding this evidence, and as a result, failed to show the trial court erred in granting summary adjudication. We affirm.

## BACKGROUND

In 2002, plaintiff and defendant bought a residence in Walnut, California for their aging parents. They took ownership as joint tenants each with an undivided one-half interest and invested roughly the same amount of money in the purchase with the agreement they would split expenses. In 2013, defendant recorded a "Declaration Severing Joint Tenancy," transforming the ownership to tenancy in common but not changing the parties' respective 50 percent ownership interests.[1] Since the parties' parents were now deceased, plaintiff wanted to sell her interest in the property, but defendant refused to either purchase her half or sell the property. Plaintiff filed a complaint for partition and other claims not at issue here. She then moved for summary adjudication on the partition claim, arguing there was no dispute of fact she accurately described the property in the complaint, she and defendant each owned half of the property, and sale was necessary rather than physical division due to the nature of the property.

In opposition, defendant argued summary adjudication was inappropriate because plaintiff's partition action was barred by waiver, estoppel, and laches, and because plaintiff lacked a beneficial interest in the property. To support these defenses, he

---

[1]     As part of her motion for summary adjudication, plaintiff requested judicial notice of this declaration and the original grant deed for the property. It does not appear the trial court expressly ruled on the request. We will assume the trial court granted this request because defendant does not challenge this evidence on appeal.

submitted his own declaration and a declaration from his brother setting forth the following facts (among others):

At a wedding reception in December 1999, plaintiff told the parties' parents and siblings that their parents would need to divest their assets in order to qualify for Medicare and Medicaid and suggested they and defendant buy a home in a new senior living community in Walnut, California. Defendant expressed interest in purchasing a home in that community because it would allow him and his wife to use the home when he retired or earlier in order to live closer to their children. He and his father also said they were open to purchasing the home provided it was not sold for the lifetimes of the parents' children and "hopefully" their grandchildren, which stemmed from the Chinese cultural tradition of passing family homes through generations. With that understanding, defendant, plaintiff, and their parents orally agreed that defendant and their parents would pursue buying a home.

The parties' parents owned other property in Florida and Monterey Park, California. In 2000, plaintiff urged them to transfer those properties into her name for the purpose of qualifying for Medicare and Medicaid. Their parents did so.[2] For the Monterey Park property, their father recorded a statement that he transferred the property into plaintiff's name "due to the process of the old age allowance application" and that he was still the owner of the property.

In August 2002, plaintiff located the property in Walnut, California the parties would eventually purchase. Plaintiff and the parties' parents agreed plaintiff would hold title to the property and confirmed their earlier agreement that the property would not be sold during the parties' parents' lifetimes and "hopefully" during their grandchildren's lifetimes. Defendant also repeated his intention to live in the home upon his retirement or earlier, which plaintiff acknowledged. Two months later, plaintiff used funds she was holding for the parties' parents to purchase the property and defendant used his own

_____

[2] The Florida property was transferred into plaintiff's and her sister's names, while the Monterey Park property was transferred into plaintiff's name alone.

3

funds to pay $220,000 of the purchase price. Defendant once again affirmed the parties' agreement not to sell the property for one or more generations and reminded plaintiff he intended to live there upon retirement, which she again acknowledged. The sale was completed and plaintiff and defendant were both listed on the grant deed, although plaintiff held title on behalf of their parents only in accordance with their agreement.

The parties' parents lived at the property from 2002 until they passed away within a year of each other between 2005 and 2006. During that time, they and plaintiff purchased an "ancestral altar" to place in the home to memorialize their agreement not to sell the property. In Chinese culture, the altar created a "generational home," i.e., a home passed through generations, and because it could not be removed for spiritual reasons, the home would not be sold or transferred outside the family. When the parties' father fell ill and passed away, plaintiff again reaffirmed their agreement not to sell—memorialized by the altar—and affirmed she held title only on behalf of the parties' parents. From the time their mother passed away, plaintiff had exclusive possession of the property.

In 2013, defendant decided to retire, at which point he recorded the Declaration Severing Joint Tenancy. In early 2014, he moved in. Soon after, plaintiff demanded he buy her interest in the property or be subject to a partition action.

As part of his declaration in opposition to summary adjudication, defendant submitted exhibits that included, among other documents, the parties' father's recorded statement that he owned the Monterey Park property even though it was in plaintiff's name, a certificate of deposit from plaintiff's bank account reflecting a deposit of some funds, and photographs of the altar and plaintiff's belongings in the home. He also requested judicial notice of the deeds for the parents' Florida and Monterey Park properties and his recorded Declaration Severing Joint Tenancy.

In reply to defendant's opposition to the motion for summary adjudication, plaintiff objected to almost all of defendant's declaration and all of defendant's brother's declaration. She did not specifically object to the exhibits attached to defendant's declaration, nor did she expressly oppose defendant's request for judicial notice. She also offered a declaration from her attorney who had been representing her since the 2006

4

probate proceedings involving the parties' mother's estate. He stated he made several requests to defendant's attorneys to sell the property or purchase plaintiff's interest, to no avail. He claimed that, until the present action, defendant never raised an issue over plaintiff's beneficial interest in the property, never claimed he would get to use the property in his retirement, and never claimed the property was a "generational home" or installing the altar meant it could not be sold.

The trial court granted the motion. In doing so, it sustained nearly all of plaintiff's objections, excluding defendant's and his brother's testimony that (1) plaintiff agreed the property could not be sold during the lifetimes of the parties' parents' children or grandchildren, (2) plaintiff and the parties' parents purchased an altar for the home to memorialize their agreement, (3) plaintiff agreed to take title on behalf of the parents only, and (4) at any time after the 1999 wedding reception plaintiff understood defendant intended to move into the property when he retired. The court also excluded all of defendant's testimony regarding the parents' other properties. The only testimony of consequence the court did not exclude was defendant's statement that at the 1999 wedding reception he expressed interest in purchasing a home in Walnut, California for retirement and plaintiff "stated that she understood and acknowledged my primary purpose in purchasing a home in the Walnut Community, to wit, use of the Property by me and my wife when I retire or earlier to be closer to our children in Southern California." The court did not expressly rule on defendant's request for judicial notice.

Defendant timely appealed the court's orders. (Code Civ. Proc, §§ 904.1, subd. (a)(9), 906; all further statutory citations are to the Code of Civil Procedure unless otherwise noted.)

## DISCUSSION

A motion for summary adjudication "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subds. (c), (f).) "The moving party 'bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.] To meet that burden, a plaintiff seeking

5

summary adjudication on a cause of action must present evidence sufficient to establish every element of that cause of action.  A plaintiff's initial burden, however, does not include disproving any affirmative defenses the defendant asserts.  'Once the plaintiff . . . has met [its] burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.'" (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 630-631 (*California Bank & Trust*); see § 437c, subd. (p)(1).)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334; see § 437c, subd. (d) ["Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations."].)  We review evidentiary rulings in connection with a summary adjudication motion for abuse of discretion.  (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169.)

In the trial court, defendant did not dispute plaintiff met her initial burden of establishing no triable issue of fact on her partition claim.  She offered undisputed evidence of (1) the legal and common description of the property, (2) her and defendant's one-half interests in the property, and (3) reasons why the property could not be divided and should instead be sold.  (§ 872.230.)[3]  Instead, defendant asserted the defenses of

---

[3]     Section 872.230 requires the complaint in a partition action to set forth:  "(a)  A description of the property that is the subject of the action.  In the case of tangible personal property, the description shall include its usual location.  In the case of real property, the description shall include both its legal description and its street address or common designation, if any.  [¶]  (b)  All interests the plaintiff has or claims in the property.  [¶]  (c)  All interests of record or actually known to the plaintiff that persons other than the plaintiff have or claim in the property and that the plaintiff reasonably believes will be materially affected by the action, whether the names of such persons are

6

waiver, estoppel, and fairness, all of which are viable defenses to partition. (§ 872.710, subd. (a); *American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008, 1013-1015; *Thomas v. Witte* (1963) 214 Cal.App.2d 322, 326.) Waiver occurs, for example, when co-owners agree to satisfying certain conditions before selling their interests. (See, e.g., *LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 497 [right of first refusal if a co-owner wanted to sell his or her interest]; *Schwartz v. Shapiro* (1964) 229 Cal.App.2d 238, 253 [agreement that co-owners must first offer interest to co-owner before selling to third party]; *Miranda v. Miranda* (1947) 81 Cal.App.2d 61, 65-66 [agreement that former spouses would remain joint tenants so long as wife did not remarry and kept property as home for her and the spouses' children].) Courts have also found implied waiver when partition would defeat a business purpose for which the property was acquired, such as when "cotenants agreed to a plan designed to develop property over a period of time (*Thomas v. Witte*[*, supra*,] 214 Cal.App.2d 322) or invested in property which was subject to a long-term lease with a view toward obtaining a secure source of investment income (*Pine v. Tiedt* (1965) 232 Cal.App.2d 733)." (*American Medical International, Inc., supra*, at p. 1015.) Fairness may bar partition because partition results in the forced sale of the property, forcing the objecting co-owner "to part with his interest in the property, contrary to his expectations which brought into being defenses such as waiver of the right of partition, estoppel or other conditions which make applicable the equitable principle of fairness." (*Id.* at p. 1016.)

Although defendant attempted to create a disputed issue of fact over his defenses with evidence that plaintiff orally agreed on several occasions not to sell the property and to allow defendant to live in the property upon retirement, the trial court sustained plaintiff's objections and excluded nearly all of that evidence. After those rulings, the only remaining evidence submitted by defendant was (1) defendant's statement that, in

known or unknown to the plaintiff. [¶] (d) The estate as to which partition is sought and a prayer for partition of the interests herein. [¶] (e) Where the plaintiff seeks sale of the property, an allegation of the facts justifying such relief in ordinary and concise language."

1999, plaintiff understood defendant wanted to buy a property in Walnut, California to use in retirement, (2) the exhibits to defendant's declaration purporting to support his testimony, and (3) the deeds to the parties' parents' Florida and Monterey Park properties subject to defendant's request for judicial notice. Assuming all of this evidence remained admissible, it did not create a disputed issue of fact. The exhibits and deeds were irrelevant absent defendant's explanation of their significance in his declaration, which the court excluded. Plaintiff's understanding in 1999 that defendant intended to use an as-yet unidentified property in retirement could not demonstrate plaintiff waived her right to partition because the parties did not identify—let alone purchase—the property until three years later. Thus, in the absence of admissible evidence creating a triable issue over defendant's defenses, the trial court properly granted summary adjudication.

On this record, defendant's task on appeal was two-fold: to show the trial court abused its discretion in excluding his key evidence, and if so, to show that evidence created a triable issue of fact. (Cf. *California Bank & Trust, supra*, 222 Cal.App.4th at p. 637 [defendants' failure to challenge evidentiary rulings on appeal from summary adjudication motion required Court of Appeal to exclude defendants' evidence and find defendants had no evidence to create a triable issue].) In his opening brief on appeal, defendant focused on the second question, while ignoring the first. He said only that the trial court "exceeded its authority and effectively made findings of fact by striking nearly all of the evidence of the parties' express agreement and [defendant's] reasonable expectations." This blanket statement does not demonstrate the trial court abused its discretion. For the first time in his reply brief, he argued the trial court improperly excluded plaintiff's statements affirming the parties' agreement not to sell the property, contending those statements were relevant and not barred by the hearsay rule. (Evid. Code, §§ 210, 1220 [statements offered against party not barred by hearsay rule].) Yet, he did not show good cause for raising these points for the first time in his reply brief, so we are not inclined to consider them. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) Even if we were so inclined, the trial court excluded this evidence on several other grounds, including that it was vague, speculative, lacking foundation,

8

and comprised of improper conclusions.  Defendant has not challenged those rulings on appeal.

In the end, defendant's failure to challenge the court's evidentiary rulings provides "an adequate and independent ground for affirming the trial court's decision granting" summary adjudication.  (*California Bank & Trust, supra*, 222 Cal.App.4th at p. 637.)

**DISPOSITION**

The trial court's orders are affirmed.  Plaintiff shall recover her costs on appeal. Plaintiff's request for attorney fees on appeal is denied without prejudice to her seeking such fees in the trial court.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.



RUBIN, J.